## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TATYANA GARCIA,** | : | **No. 3:23cv1210** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **AMTC-1, INC., t/d/b/a FORTIS** | : | |
| **INSTITUTE and BIOMAT, USA, INC.,** | : | |
| **Defendants** | : | |

## MEMORANDUM

Before the court is a motion to dismiss Plaintiff Tatyana's Garcia's second amended complaint filed by Defendant AMTC-1, Inc. t/d/b/a Fortis Institute ("Fortis Institute" or "Fortis") in this matter arising out of a student externship.[1] Having been fully briefed, this motion is ripe for decision.

## Background

Fortis Institute is a for-profit institution, which provides, among other things, vocational training courses in phlebotomy.[2] (Doc. 32, Sec. Am. Compl. ¶¶ 7, 10, 20-21).  Plaintiff entered Fortis Institute's phlebotomy program in January 2021

---

[1] Defendant Fortis Instutute indicates that it has been incorrectly named in the second amended complaint and that its correct legal name is AMTC-II, Inc. (Doc. 38, Def. Br. in Supp. at 2).

[2] Phlebotomy is the therapeutic practice of opening a vein to draw blood. Ross v. Am. Red Cross, 567 F. App'x 296, 299, n.1 (6th Cir. 2014)(citing American Heritage Dictionary 931 (2d ed. 1982)).

and succeeded in the classroom portion of the program. [3] (Id. ¶ 23).  Completion

of an externship was required as part of Fortis Institute's phlebotomy program.

(Id. ¶ 25).

As part of the program, in July 2021, Fortis Institute assigned plaintiff to an

externship at Biomat at their place of business in Wilkes-Barre, Luzerne County,

Pennsylvania.[4] (Id. ¶ 24).  Plaintiff alleges that she did not receive a salary or

compensation from Fortis Institute or Biomat in exchange for her externship

labor. (Id.  ¶ 27).  Rather, she alleges that externs like the plaintiff displaced

regular employees of Biomat and, without such externs, Biomat would have to

hire additional staff. (Id. ¶ 30).  Per plaintiff, the externship was purportedly part

of Fortis Institute's educational program, but it was not like training which would

be given in an educational environment and was thus not to plaintiff's benefit. (Id.

¶¶ 28-29).

Plaintiff avers that she is an "adult female individual of a darker brown

color; [of a] Hispanic, non-Caucasian, non-European race; [with] Puerto Rican

---

[3] These background facts are derived from plaintiff's second amended complaint.  At this stage
of the proceedings, the court must accept all factual allegations as true.  Phillips v. Cnty. of
Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)(citations omitted).  The court makes no
determination, however, as to the ultimate veracity of these assertions.

[4] Biomat, USA, Inc. ("Biomat") is named as a separate defendant in this matter.  Previously,
plaintiff referred to this defendant using numerous entities with names suggesting that Biomat
operates for-profit blood plasma donation centers. (See Doc. 32, Sec. Am. Compl. ¶¶1, 8).

ancestry and/or national origin." (Id. ¶ 5).  During her externship at the Biomat location, on July 28, 2021, plaintiff learned from a fellow externship classmate that a white Biomat employee had issues with the plaintiff.[5] (Id. ¶¶ 33-35). Specifically, the Biomat employee stated (outside of plaintiff's presence): "If the ghetto girl laughs with my boyfriend again I'm going to say something[,]" referring to plaintiff. (Id. ¶ 33).  Per plaintiff's externship classmate, that Biomat employee also called plaintiff a "ghetto black bitch" and also said to a Biomat supervisor: "If you put this black monkey bitch to work with my boyfriend again…." (Id. ¶ 34).

Plaintiff brought the Biomat employee's remarks to the attention of a Biomat supervisor. (Id. ¶ 36).  The supervisor told her manager. (Id. ¶ 37). The Biomat manager then brought plaintiff and the Biomat employee together to speak to each other in the backroom of the business, but the Biomat employee refused to speak to the plaintiff or the Biomat manager and left the site. (Id. ¶ 37). The Biomat employee then messaged plaintiff using Facebook with the statement: "I hope you die you monkey bitch your kids are fucking ugly." (Id. ¶ 38).

Plaintiff then went to the externship coordinator for Biomat and complained about the employee's speech and conduct. (Id. ¶ 39).  On the evening of July 28,

---

[5] Plaintiff specifically alleges that this Biomat employee "is a female of the white, Caucasian race, is of light, pale color; is not Hispanic, and is not of Puerto Rican ancestry and/or national origin." (Doc. 32, Sec. Am. Compl. ¶ 35).

2021, the program director for Fortis Institute called the plaintiff at her home. (Id. ¶ 40).  Fortis Institute's program director advised plaintiff that she was aware of the incidents of racial harassment at Biomat and told plaintiff that efforts were being made to work things out at the externship site with Biomat. (Id.)

The following morning, however, on July 29, 2021, Fortis Institute's program director called plaintiff as plaintiff travelled to the Biomat site. (Id. ¶ 41). The director advised that Biomat had dismissed plaintiff from the externship. (Id.)

Plaintiff further alleges that Fortis Institute "made no efforts to work things out at and with Biomat, notwithstanding its knowledge that Biomat's decision to dismiss [p]laintiff from the externship was on account of her race, color and ancestry and/or in retaliation for her complaints of harassment." (Id. ¶ 42). Plaintiff also alleges Fortis exercised substantial control over Biomat regarding the provision of externs to their business. (Id. ¶ 49).  She alleges that Fortis coordinated with Biomat to dismiss the plaintiff from the externship.  (Id. ¶ 47). Thus, per plaintiff, Fortis was intentionally complicit in the racial harassment, discrimination, and retaliation and took no action to prevent or remediate it. (Id. ¶ 52).

Moreover, as alleged, Fortis Institute did not end its relationship with Biomat regarding externships following the harassment reported by the plaintiff. (Id. ¶ 48).  Plaintiff requested an alternate externship program, but neither Fortis

4

nor Biomat took any steps to remediate the dismissal. (Id. ¶ 55).  Plaintiff's dismissal from Biomat's externship program also prevented her from completing the phlebotomy program at Fortis.  (Id. ¶ 54).  Plaintiff alleges that her dismissal from the externship program prevented her from becoming certified as a phlebotomist and, as a result, she sustained economic loss, emotional distress, and other damages. (Id.)

Plaintiff's second amended complaint advances eight (8) causes of action. The first five (5) counts allege harassment and discrimination based on race, color, and/or national origin in violation of:

- Count I: Title VI of Civil Rights Act of 1964, 42 U.S.C. §§ 2000d *et seq*. ("Title VI");

- Count II: the Civil Rights Act of 1870, 42 U.S.C. § 1981 ("Section 1981");

- Count III: Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d, 2000e-2(a), 2000e-3(a), *et al*. ("Title VII");

- Count IV: the Pennsylvania Human Relations Act ("PHRA"), 43 PA. STAT. § 955(a), (d), (h); and

- Count V: the Pennsylvania Fair Educational Opportunities Act ("PFEOA"), 24 PA. STAT. §§ 5001, *et seq*.

These claims also assert that Fortis Institute and Biomat retaliated against plaintiff for reporting the race-based discrimination and harassment.

Plaintiff also alleges that, pursuant to federal and state laws, she qualifies as an employee of the defendants.  Plaintiff also raises wage claims pursuant to:

- Count VI: the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 206 *et seq.*; and

- Count VII: the Pennsylvania Minimum Wage Act ("PMWA"), 43 PA. CONS. STAT.  §§ 333.102 *et seq.*;

Finally, plaintiff also asserts a cause of action under state common law as follows:

- Count VIII: breach of contract

Relative to plaintiff's theories of liability on her contract claims, plaintiff alleges that Fortis Institute breached the agreement that Fortis and the plaintiff had with each other. (Id. ¶ 88).  Additionally, plaintiff advances that she was a third-party beneficiary of the agreement between Fortis Institute and Biomat. (Id.)  Per the plaintiff, the defendants breached the agreements with each other, and plaintiff suffered damages from that breach. (Id. ¶¶ 88-89)

In response to the second amended complaint, Fortis Institute filed the instant motion to dismiss seeking the dismissal of all claims.[6] (Doc. 37). Having been fully briefed by the parties, this matter is ripe for disposition.

---

[6] Defendant Biomat filed an answer to plaintiff's second amended complaint. (Doc. 39).

**Jurisdiction**

Since this case is brought pursuant to several federal statutes, the court has jurisdiction pursuant to 28 U.S.C. § 1331. ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). The court has supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a). ("In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.")

**Legal Standard**

Defendant has filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. The court tests the sufficiency of the complaint's allegations when considering a Rule 12(b)(6) motion.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim has facial plausibility when factual content is pled that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged.  Id. (citing Twombly, 550 U.S. at 570).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

On a motion to dismiss for failure to state a claim, district courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief. See Phillips, 515 F.3d at 233 (citations omitted).

**Analysis**

Fortis Institute moves to dismiss all eight (8) of plaintiff's causes of action. For ease of disposition, the court will address plaintiff's claims in two categories. The court will first address plaintiff's claims in the education context, i.e., the Title VI, Section 1981, PFEOA, and breach of contract claims.  The court will then address plaintiff's claims in the employment context, that is, her claims for non-payment of wages (FLSA and PMWA claims) and her race, color, and national origin discrimination claims raised in plaintiff's capacity as an alleged employee (Title VII, Section 1981, and PHRA claims).

### 1. Plaintiff's Claims in the Education Context

#### a. Title VI Claims

Count I of plaintiff's second amended complaint asserts a claim that plaintiff suffered harassment and discrimination in violation of Title VI.  Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.  The statute implies a private right of action. Alexander v. Sandoval, 532 U.S. 275, 279 (2001).

Title VI only prohibits intentional discrimination. Id. at 280.  "Plaintiffs suing under Title VI may show intentional discrimination with evidence demonstrating either discriminatory animus or deliberate indifference." SEPTA v. Gilead Scis., Inc., 102 F. Supp. 3d 688, 701 (E.D. Pa. 2015)(citing Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 275 (3d Cir. 2014)).

Intentional discrimination may be proven by a trail of direct evidence.[7]  See Blunt, 767 F.3d at 275; Astaraee v. Villanova Univ., 509 F. Supp. 3d 265, 270 (E.D. Pa. 2020); Katchur v. Thomas Jefferson Univ., 354 F. Supp. 3d 655, 666 (E.D. Pa. 2019).  Direct evidence means evidence sufficient to allow the jury to

---

[7] This method derives from Justice O'Connor's opinion concurring in the judgment of Price Waterhouse v. Hopkins, 490 U.S. 228, 261-279 (1989). See Fakete v. Aetna, Inc., 308 F.3d 335, 337 & n. 2 (3d Cir. 2002)(citation omitted).

find that the decision makers placed substantial negative reliance on the plaintiff's protected traits in reaching their decision. See Fakete, 308 F.3d at 338 (citing Connors v. Chrysler Fin. Corp., 160 F.3d 971, 976 (3d Cir. 1998); Price Waterhouse, 490 U.S. at 277)(further citations omitted)).  Direct evidence of discrimination is also evidence, which, if believed, would prove the existence of the fact in issue without inference or presumption. Torre v. Casio, Inc., 42 F.3d 825, 829 (3d Cir. 1984)(citations omitted).

In opposition to the motion to dismiss, plaintiff takes the position that her claim proceeds based on direct evidence.  (Doc. 42 at 21).  In review of the second amended complaint, plaintiff has alleged racial animus by a Biomat employee.  She also alleges that she was dismissed from the externship because of that Biomat employee's objections to plaintiff's continuing presence at the worksite. (Doc. 32, Sec. Am. Compl. ¶ 44).  She contends that the dismissal was accomplished "in coordination with, by agreement with and enabled by" Fortis Institute. (Id. ¶ 47).  Per plaintiff, Fortis Institute was also "intentionally complicit" in the discrimination.  (Id. ¶ 53).  Construing the facts pled in a light most favorable to plaintiff, she has alleged that individuals with authority from both defendants sided with the person making inflammatory racist comments and not with the plaintiff and dismissed plaintiff from the externship.

Fortis Institute argues that these allegations fail to plausibly state a claim for intentional discrimination based on direct evidence. (Doc. 43, Def. Reply Br. at 6-8). The above allegations, however, may reflect direct evidence of discrimination by decision-makers at Fortis Institute and Biomat as may be borne out through the discovery process.

To the extent that plaintiff's intentional discrimination claim relies on indirect evidence, "a plaintiff may establish a prima facie factual foundation of discrimination by drawing reasonable inferences from certain objective facts that are generally not in dispute." Blunt, 767 F.3d at 275. To proceed in this manner, a plaintiff must demonstrate that: (1) she belonged to a protected class; (2) she qualified for the benefit or program at issue; (3) she suffered an adverse action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination.[8] See Erie CPR v. PA Dep't of Transportation, 343 F. Supp. 3d 531, 549 (W.D. Pa. 2018)(citations omitted); Doe v. The Trustees of the Univ. of Pennsylvania, 270 F. Supp. 3d 799, 829 (E.D. Pa. 2017)(citing Blunt v. Lower Merion Sch. Dist., 826 F. Supp. 2d 749, 758 (E.D. Pa. 2011), aff'd, 767 F.3d 247 (3d Cir. 2014)(further citations omitted)).

---

[8] This method derives from the framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

11

Fortis Institute argues that plaintiff has not plausibly alleged that she experienced any adverse action or that such action occurred under circumstances where discrimination may be inferred.   In review of the second amended complaint, however, plaintiff has alleged facts plausibly addressing each of the above elements.  She has alleged: 1) that she is of "darker, brown color[,] Hispanic, non-Caucasian, non-European race[, and] Puerto Rican ancestry and/or national origin[;]" (Doc. 32, Sec. Am. Compl. ¶ 5); 2) her qualifications to be enrolled in Fortis Institute's phlebotomy program, (Id. ¶ 23); 3) that she was dismissed from an externship by the defendants acting in concert and prevented from completing the phlebotomy program by Fortis Institute's further actions (Id. ¶¶ 43, 47, 54-55); and 4) that discrimination could be inferred under the circumstances, i.e., these adverse events followed shortly after a Biomat employee messaged plaintiff with a racial slur, which was coupled with a wish for the plaintiff's death and plaintiff sought recourse from the defendants. (Id. ¶¶ 33–41).

Fortis Institute also asserts that the plaintiff must allege that the school treated her differently from similarly situated students in a non-protected class (Doc. 38, Def. Br. in Supp. at 21-22).  Under the law, however, a plaintiff *may* make out a *prima facie* case with evidence that comparators outside of the relevant class were treated more favorably, but such proof is not required. See

e.g. Pivirotto v. Innovative Sys., Inc., 191 F.3d 344, 356 (3d Cir. 1999). Plaintiff

has thus alleged a sufficient *prima facie* case to proceed with her Title VI claim

with reference to direct and indirect evidence.

Additionally, a Title VI claim may be asserted against a defendant based on

their deliberate indifference to harassment and discrimination by a third party.

See Blunt, 767 F.3d at 272, 294.  To establish a Title VI deliberate indifference

claim, a plaintiff must plausibly plead that: 1) the defendant received federal

funds; 2) the plaintiff experienced harassment or discrimination based on race,

color, or national origin; 3) that the defendant exercised substantial control over

the third party; 4) actual knowledge by the defendant; 5) deliberate indifference

by the defendant; and 6) that the harassment and/or discrimination was so

severe, pervasive, and objectively offensive that it deprived the plaintiff of her

access to the educational opportunities or benefits provided by the school.[9]  See

Hall v. *Millersville Univ.*, 22 F.4th 397, 408 (3d Cir. 2022)(citing Davis Next Friend

LaShonda D. v. Monroe Cnty. Bd. of Ed., 526 U.S. 629 at 645–50(1999)); see

---

[9] Congress modeled Title IX of the Education Amendments of 1972 ("Title IX") after Title VI.
See Cannon v. Univ. of Chicago, 441 U.S. 677, 694–96 (1979)(footnotes omitted).  "The
drafters of Title IX explicitly assumed that it would be interpreted and applied as Title VI had
been during the preceding eight years." Id. at 696 (footnote omitted).  Title IX case law is thus
instructive in the Title VI context. See Blunt, 767 F.3d at 273 (citations omitted).  Deliberate
indifference claims arise frequently in the Title IX context. The court thus molds elements of a
sex-based Title IX deliberate indifference claim to plaintiff's race-based Title VI deliberate
indifference claim.

13

also Blunt, 767 F.3d at 273 (citing Zeno v. Pine Plains Cent. Sch. Dist., 702 F.3d 655, 664–65 (2d Cir. 2012)).

Fortis Institute challenges whether plaintiff's allegations plausibly state that the school had substantial control over Biomat and its employee.  In the Title IX setting, liability is limited to instances where the funding recipient "exercises substantial control over both the harasser and the context in which the known harassment occurs." Davis, 526 U.S. at 645.  "Only then can the recipient be said to 'expose' its students to harassment or 'cause' them to undergo it 'under' the recipient's programs." Id.  Furthermore, where a defendant lacks the authority to take remedial action, it cannot be directly liable for its indifference due to a lack of control. See id. at 644.

Here, plaintiff alleges that Fortis Institute substantially controlled Biomat by determining whether to provide externs to Biomat and also by determining who should be placed at Biomat's site. (Doc. 32, Sec. Am. Compl. ¶ 49).  As further alleged, Fortis Institute placed plaintiff at Biomat and both defendants discriminated against the plaintiff after plaintiff experienced race-based harassment.  This discrimination led to plaintiff failing to complete the requirements of Fortis Institute's phlebotomy program.  Plaintiff's pleading can be read to allege that Fortis Institute condoned and compounded the discrimination plaintiff faced during her externship.  This is so because it is alleged that Fortis

Institute had the authority to take remedial measures at the Biomat site but chose not to do so.  Accordingly, since Fortis Institute is alleged to have controlled the context in which the race-based harassment and discrimination occurred in this matter, plaintiff has pled facts meeting the substantial control element of a deliberate indifference claim.

Fortis Institute also contends that the plaintiff has failed to plausibly plead that the school was deliberately indifferent to the harassment.  Under the law, the measuring stick for deliberate indifference is "where the [school's] response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." Davis, 526 U.S. at 648; see also Hall, 22 F.4th at 410 (emphasizing that deliberate indifference is not a mere reasonableness standard).  Fortis Institute argues that, as alleged, its program director responded promptly to plaintiff's complaints about harassment at the Biomat site.  This single allegation by plaintiff in her second amended complaint is not dispositive of plaintiff's entire claim, however.  Plaintiff has also averred that, as part of that prompt response, Fortis Institute operated in concert with Biomat and enabled plaintiff's dismissal from the externship.  Plaintiff has also averred that Fortis then failed to or refused plaintiff in an alternate externship program or otherwise remediate her dismissal from the Biomat site, which prevented plaintiff from completing the phlebotomy program.  When read as a whole, the second

15

amended complaint sets forth sufficient facts to meet this element of a claim premised on deliberate indifference.[10]  The second amended complaint also plausibly pleads a Title VI claim premised on deliberate indifference to harassment and discrimination.

Count I of the second amended complaint also advances a retaliation claim.  To make out a claim for Title VI retaliation, the plaintiff must show (1) that she engaged in protected activity; (2) that the defendant took material adverse action against her, and (3) that a causal connection existed between the protected activity and the adverse action.  Whitfield v. Notre Dame Middle Sch., 412 F. App'x 517, 522 (3d Cir. 2011)(citing Peters v. Jenney, 327 F.3d 307, 320 (4th Cir. 2003)).  In challenging the retaliation claim, Fortis Institute relies on its previously advanced arguments about whether the plaintiff has alleged adverse action.  Having determined that plaintiff has pled such adverse action above, plaintiff has also plausibly alleged a Title VI retaliation claim.  The motion to

---

[10] In its brief in support of the motion, Fortis Institute also argues that plaintiff failed to plead the element of severe, pervasive, and objectively offensive harassment.  This argument, however, is relegated to a footnote. "[A]rguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived." See John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp., 119 F.3d 1070, 1076 (3d Cir. 1997) (citing Commonwealth of Pa. v. HHS, 101 F.3d 939, 945 (3d Cir. 1996)).  Nonetheless, the single use of a racially discriminatory term can be sufficiently severe to state a claim for a hostile work environment.  See Castleberry v. STI Grp., 863 F.3d 259, 264 (3d Cir. 2017).  Consequently, the racial epithets allegedly used by the Biomat employee are sufficiently severe and pervasive enough to meet this element of a deliberate indifference claim.

dismiss plaintiff's Title VI claims in Count I of the second amended complaint will thus be denied.

### b. **Section 1981 Claims**

Fortis Institute also moves to dismiss plaintiff's Section 1981 claim as asserted in Count II of the second amended complaint.  Plaintiff asserts this claim for alleged discrimination that occurred in the education context and the employment context.  (Doc. 32, Sec. Am. Compl. ¶ 61).

Generally, Section 1981 prohibits race-based discrimination in the making and enforcing of contracts. Rivers v. Roadway Exp., Inc., 511 U.S. 298, 302 (1994).  Section 1981 claims are analyzed under the same McDonnell Douglas framework as Title VI claims. Astaraee, 509 F. Supp. 3d at 273.  As the court has determined the second amended complaint states a Title VI claim, Fortis Institute's motion to dismiss the Section 1981 claim will be denied.  Plaintiff's employment related claims are further discussed in section 2 below.

### c. **PFEOA Claim**

Count V of plaintiff's second amended claim asserts that Fortis Institute violated the PFEOA.  Under this Pennsylvania state statute, a plaintiff has a private right of action for claims of discrimination by an educational institution. See 24 PA. STAT. § 5007.1(a).  If a court determines that a school has engaged in an unlawful discriminatory practice, a court shall enjoin the school from engaging

in such a practice and order affirmative action, which may include, *inter alia*, "reimbursement of tuition or fees, or any other legal or equitable relief as the court deems appropriate." 24 PA. STAT. § 5007.1(c).  Unfair educational practices include expelling, suspending, punishing, or otherwise discriminating against any student because of race, religion, color, ancestry, national origin, sex, handicap, or disability. 24 PA. STAT. § 5004(a)(3).

PFEOA claims also proceed using the McDonnell Douglas framework. See Manning v. Temple Univ., 157 F. App'x 509, 513 & n. 3 (3d Cir. 2005); Weir v. Univ. of Pittsburgh, No. 22-3392, 2023 WL 3773645, at *3 (3d Cir. June 2, 2023). As discussed above, plaintiff has plausibly pled a *prima face* case under that framework.  Thus, the motion to dismiss plaintiff's PFEOA claim in Count V will also be denied.

### d. Breach of Contract Claims

Fortis Institute also moves to dismiss plaintiff's breach of contract claim asserted in Count VIII of the second amended complaint.  Relative to this claim, Fortis attaches two exhibits to the motion to dismiss: 1) an enrollment agreement between the parties ("Enrollment Agreement"), (Doc. 38-1); and 2) the 2021-2022 Fortis catalog ("Catalog"), (Doc. 38-2).

Courts may "generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record" when

18

deciding a Rule 12(b)(6) motion. <u>Pension Ben. Guar. Corp. v. White Consol.</u> <u>Indus., Inc.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993)(citations omitted).  But a court may also consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." <u>Id.</u> (citations omitted).  Furthermore, where a document is integral to or explicitly relied upon in the complaint, it may be considered without converting a motion to dismiss for failure to state a claim into one for summary judgment under Rule 56.  <u>Doe v. Princeton Univ.</u>, 30 F.4th 335, 343 (3d Cir. 2022)(citations and internal quotation marks omitted).

In articulating her breach of contract claim in the second amended complaint, plaintiff did not provide any of the terms allegedly breached. Her breach of contract claim against Fortis Institute, however, must be based on some agreement between the parties.  Additionally, plaintiff references both the Enrollment Agreement and Catalog in formulating her arguments in opposition to the motion to dismiss. (<u>See</u> Doc. 42 at 19-20).  In doing so, plaintiff concedes that both the Enrollment Agreement and Catalog make up the agreement and, in turn, are documents integral to her breach of contract claim.  Consequently, the court will consider the Enrollment Agreement and Catalog and refer to them in ruling upon the motion to dismiss.  These documents are essential to plaintiff's

contract claim and her claim that she was an employee of Fortis Institute, as discussed further below.

To successfully maintain a cause of action for breach of contract, the plaintiff must establish: (1) the existence of an agreement, including its essential terms; (2) a breach of a duty imposed by that agreement; and (3) damages resulting from the breach. Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. L. Firm of Malone Middleman, P.C., 137 A.3d 1247, 1258 (Pa. 2016). When a party fails to perform any obligation imposed by the parties' agreement, the lack of performance is considered to be a breach of the agreement creating that obligation. John B. Conomos, Inc. v. Sun Co., Inc., 831 A.2d 696, 707-08 (Pa. Super. Ct. 2003), app denied, 845 A.2d 818 (Pa. 2004).  In Pennsylvania, every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement. Id. at 705–06 (citing Kaplan v. Cablevision of PA, Inc., 671 A.2d 716, 721–22 (Pa. Super. Ct. 1996)).

Fortis Institute argues that plaintiff has failed to plead the duty allegedly breached by the school.  Plaintiff counters that she has alleged facts satisfying each element of a breach of contract claim.  The court finds plaintiff's arguments more persuasive.

The Enrollment Agreement indicates that plaintiff enrolled in a thirty (30) week, two (2) semester phlebotomy and laboratory assistant program with a start

date of February 15, 2021 and an expected graduation date of September 10, 2021. (Doc. 38-1 at ECF p. 2).  Plaintiff executed that document, which states: "This Enrollment Agreement ("Agreement") is a legally binding contract between Fortis Institute (the "Institute") and me (the "student"). A degree/diploma will be awarded if I complete my program and comply with all the requirements of [Fortis Institute]." (Id.)

As indicated in the Catalog, students in the phlebotomy program are "required to complete the required externship hours and other related learning activities prior to graduation." (Doc. 38-2, ECF p. 14).  The externship required completion of 180 "clock hours." (Id., ECF p. 15).  Additionally, the Catalog contains terms regarding externships as follows:

EXTERNSHIPS
[…]

5.    Site availability, assignment to a site

   a.    Students will meet with the externship coordinator or externship instructor during the course preceding any course with an externship component…The externship instructor will review available sites with the student and select the venue that will best meet educational requirements…Generally students are not required to find their own sites, rather they will be assigned to a site with whom the Institute has an existing relationship…

   b.    The student will be assigned to a specific venue and will be assigned specific regular hours of attendance that will enable the student to complete the

21

externship within the timeframe specified in the program requirements if the student attends as specified.

[...]

7.  Attendance, reporting of attendance, notification of intention to be absent, or unexpected absence

  a.  The student must complete 100% of the hours specified in the program outline for externship.

  [...]

  e.  If more than 20% of the scheduled externship hours are missed, in accordance with the attendance and grading policy, the student will be considered to have failed the course and will be required to retake it when a suitable site becomes available. There may be a charge involved.

(Id., ECF p. 30-32).

In opposing the motion, plaintiff highlights allegations that Fortis Institute worked in concert with Biomat to cause her dismissal from the externship based on her race, color, and/or national origin and for complaining about racial harassment she was suffering at the externship site. (See Doc. 32, Sec. Am. Compl. ¶¶ 41-47, 49, 53). Plaintiff further alleges that Fortis Institute did not take any steps to place her in an alternate externship program or remediate her dismissal from the externship program despite the alleged harassment and discrimination. (Id. ¶ 55).

22

When considering the sum of the allegations made by plaintiff with the Enrollment Agreement and Catalog provided by Fortis Institute, plaintiff's breach of contract claim essentially comes down to the following: 1) plaintiff and Fortis agreed on terms for plaintiff to obtain an educational outcome, including the externship requirement for a phlebotomy diploma; 2) Fortis took affirmative steps to prevent plaintiff from obtaining that outcome by dismissing her from an externship in collaboration with Biomat for unlawful reasons; 3) Fortis also then did not place her in an alternate externship program; 4) plaintiff could not complete program requirements; and 5) she sustained damages, including economic damages.  Considering the terms of the Enrollment Agreement and the Catalog and the duty of good faith and fair dealing implied in the contract, the second amended complaint sets forth a plausible claim for breach under Pennsylvania law.

Fortis Institute also moves to dismiss the breach of contract claim based on plaintiff's third-party beneficiary theory.  "A third-party beneficiary is one who is given rights under a contract to which that person is not a party." Konyk v. Pennsylvania State Police, 183 A.3d 981, 988 (Pa. 2018)(quoting Motorsport Eng'g, Inc. v. Maserati SPA, 316 F.3d 26, 29 (1st Cir. 2002)(further citations omitted)).  As part of its third-party beneficiary jurisprudence, Pennsylvania recognizes intended and incidental beneficiaries. See Guy v. Liederbach, 459

A.2d 744, 751 (Pa. 1983).  Intended beneficiaries have the ability to enforce the

agreement; incidental beneficiaries do not. See Chen v. Chen, 893 A.2d 87, 89,

n. 5 (Pa. 2006).

> In Pennsylvania, a party becomes an intended beneficiary:

>> only where both parties to the contract express an intention
>> to benefit the third party in the contract itself… *unless*, the
>> circumstances are so compelling that recognition of the
>> beneficiary's right is appropriate to effectuate the intention
>> of the parties, and the performance satisfies an obligation
>> of the promisee to pay money to the beneficiary or the
>> circumstances indicate that the promisee intends to give
>> the beneficiary the benefit of the promised performance.

Scarpitti v. Weborg, 609 A.2d 147, 150–51 (Pa. 1992)(emphasis in original)(citing
Guy, 459 A.2d at 751).

In challenging plaintiff's third-party beneficiary theory, Fortis has not

supplied any agreement it had with Biomat.  Consequently, the court cannot

apply the above test to determine whether plaintiff qualifies as an intended

beneficiary.  Fortis Institute's motion to dismiss Count VIII will thus be denied.

## 2. Plaintiff's Claims as an Employee of Fortis Institute

Although her claims arise as part of an externship, plaintiff also alleges that

Fortis Institute and Biomat were her co-employers.  (Doc. 32, Sec. Am. Compl. ¶

32).  Fortis argues that plaintiff has not plausibly alleged that she was an

employee and moves for the dismissal of all employment-related causes of

action.

### a. FLSA and PMWA Claims

Count VI of the second amended complaint alleges violations of the FLSA and Count VII asserts violations of the PMWA. The court's analysis of plaintiff's FLSA claim also applies to her PMWA claim. See Burrell v. Staff, 60 F.4th 25, 42, n. 9 (3d Cir. 2023), cert. denied sub nom. Lackawanna Recycling Ctr., Inc. v. Burrell, 143 S. Ct. 2662 (2023) (citing Commonwealth v. Stuber, 822 A.2d 870, 873 (Pa. Commw. Ct. 2003)).

The FLSA gives "specific, non-waivable minimum protections to individuals to ensure that each covered employee receives '[a] fair day's pay for a fair day's work,' …, and is protected from "the evil of 'overwork' as well as 'underpay,' " Johnson v. Nat'l Collegiate Athletic Ass'n, 108 F.4th 163, 175 (3d Cir. 2024)(quoting Overnight Motor Transp. Co. v. Missel, 316 U.S. 572, 578 (1942)(further citations omitted)).  Specifically, the FLSA "establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 69 (2013).

Courts in the appellate jurisdiction of the Third Circuit apply a three-part test to determine whether a plaintiff has stated a *prima facie* FLSA wage claim: (1) she was an "employee" as defined by the FLSA; (2) the defendant was

"engaged in commerce" as also defined by the FLSA; and (3) the plaintiff was not paid the federal minimum wage or was not paid overtime compensation for the hours worked in excess of forty (40) in a given week. See Fraser v. Pennsylvania State Univ., 654 F. Supp. 3d 443, 460 (M.D. Pa. 2023)(footnoted citation omitted); Perez v. Express Scripts, Inc., No. CV 19-07752, 2020 WL 7654305, at *2 (D.N.J. Dec. 23, 2020) Bedolla v. Brandolini, No. CV 18-146, 2018 WL 2291117, at *3 (E.D. Pa. May 18, 2018); Mell v. GNC Corp., No. CIV.A. 10-945, 2010 WL 4668966, at *5 (W.D. Pa. Nov. 9, 2010).

The "first inquiry in most FLSA cases is whether the plaintiff has alleged an actionable employer-employee relationship." Thompson v. Real Est. Mortg. Network, 748 F.3d 142, 148 (3d Cir. 2014). Accordingly, in the motion to dismiss, Fortis Institute argues that plaintiff, a student-extern, cannot fit the definition of "employee" pursuant to the FLSA.

Consistent with the remedial purposes of the FLSA, Congress adopted "open-ended" definitions of "employee" and "employer." See Johnson, 108 F.4th at 175–76. The term "employee" is defined as "any individual employed by an employer." 29 U.S.C. 203(e)(1). Although circular on its face, this definition has been described as the broadest that has been included in any one act. See Johnson, 108 F.4th at 176 (citing United States v. Rosenwasser, 323 U.S. 360, 363 n. 3 (1945)(further citations omitted)). Similarly broad is the definition of

26

"employer," which is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee." See id. (quoting 29 U.S.C. § 203(d)). Likewise broad is the definition of "employ," which is defined as "to suffer or permit work[.]" See id. (quoting 29 U.S.C. § 203(g)). These expansive definitions bring workers who might not qualify as employees under a strict application of traditional agency law principles or under other federal statutes within the FLSA's ambit. Id. (citation omitted). These definitions also apply notwithstanding any prior custom or contract not to compensate employees for certain portions of their work. Id. (citation omitted).

FLSA employer/employee determinations "must be made in light of the 'economic reality' of the parties' relationship." Id. (citing Goldberg v. Whitaker House Co-op., Inc., 366 U.S. 28, 33 (1961)); see also In re Enterprise Rent-A-Car Wage & Hour Emp. Pracs. Litig., 683 F.3d 462, 467 (3d Cir. 2012)("Enterprise")(citations omitted). To assess the economic reality of relationships between parties, the Third Circuit and other Circuit Courts of Appeal have adopted various multifactor tests "based on the circumstances of the whole relationship between the parties, whether individuals are employees or independent contractors, whether entities are joint employers, and whether individuals are employees or interns." Johnson, 108 F.4th at 177 (citing Donovan v. DialAmerica Mktg., Inc., 757 F.2d 1376, 1382 (3d Cir. 1985)("DialAmerica")

27

(adopting a six-factor test developed to determine whether an individual is an employee or an independent contractor); Enterprise, 683 F.3d at 469 (adopting a four-factor test to determine whether entities are joint employers); Glatt v. Fox Searchlight Pictures, Inc., 811 F.3d 528 (2d Cir. 2016) (adopting a non-exhaustive set of seven factors to determine whether an individual is a student intern or an employee)(additional citations omitted)).

There is an open question as to which test is applicable in this case.  In their briefing, both parties advance that the applicable test in this case comes from DialAmerica.  The test adopted in DialAmerica analyzes the following six (6) factors:

> 1) the degree of the alleged employer's right to control the manner in which the work is to be performed;
>
> 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;
>
> 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers;
>
> 4) whether the service rendered requires a special skill;
>
> 5) the degree of permanence of the working relationship; and
>
> 6) whether the service rendered is an integral part of the alleged employer's business.

DialAmerica, 757 F.2d at 1382-83 (quoting Donovan v. Sureway Cleaners, 656 F.2d 1368 (9th Cir. 1981)(brackets removed)).

28

Plaintiff also alleges that she was co-employed by Fortis Institute and Biomat.  (See id. ¶¶ 32, 81-82).  The Enterprise joint employment test is thus also implicated.  683 F.3d at 469.  Pursuant to Enterprise, courts consider:

> 1) the alleged employer's authority to hire and fire the relevant employees;
>
> 2) the alleged employer's authority to promulgate work rules and assignments and to set the employees' conditions of employment: compensation, benefits, and work schedules, including the rate and method of payment;
>
> 3) the alleged employer's involvement in day-to-day employee supervision, including employee discipline; and
>
> 4) the alleged employer's actual control of employee records, such as payroll, insurance, or taxes.

Id.

Still, the most critical allegation in the second amended complaint is that plaintiff was an extern. (Doc. 32, Sec. Am. Compl. ¶ 24).  "Student externs receive academic credit, usually have to complete a classroom or educational component led by a faculty member, and generally cannot accept compensation…Student interns, on the other hand, do not obtain academic credit, generally do not have faculty supervision, and can be paid." McKay v. Miami-Dade Cnty., 36 F.4th 1128, 1143 (11th Cir. 2022)(Jordan J., concurring in part, dissenting in part)(citations omitted).  Despite the distinction between

29

externs and interns, <u>Glatt</u> provides a test to assess the employment status of

unpaid interns at for-profit employers (like the defendants are alleged to be here).

Considerations from <u>Glatt</u> include:

1. The extent to which the intern and the employer clearly understand that there is no expectation of compensation. Any promise of compensation, express or implied, suggests that the intern is an employee—and vice versa.

2. The extent to which the internship provides training that would be similar to that which would be given in an educational environment, including the clinical and other hands-on training provided by educational institutions.

3. The extent to which the internship is tied to the intern's formal education program by integrated coursework or the receipt of academic credit.

4. The extent to which the internship accommodates the intern's academic commitments by corresponding to the academic calendar.

5. The extent to which the internship's duration is limited to the period in which the internship provides the intern with beneficial learning.

6. The extent to which the intern's work complements, rather than displaces, the work of paid employees while providing significant educational benefits to the intern.

7. The extent to which the intern and the employer understand that the internship is conducted without entitlement to a paid job at the conclusion of the internship.

811 F.3d at 536–37; see also Schumann v. Collier Anesthesia, P.A., 803 F.3d 1199, 1211 (11th Cir. 2015)(adopting the Glatt factors); Benjamin v. B & H Educ., Inc., 877 F.3d 1139, 1147 (9th Cir. 2017)(applying the Glatt factors).

The Glatt factors seem suitable to apply to an unpaid extern such as the plaintiff.  In Johnson, however, the Third Circuit determined that Glatt was not an appropriate test to use to determine whether college athletes were employees pursuant to the Johnson, 108 F.4th at 167, 179–180.  The opinion of the court in Johnson casts no general aspersions on the Glatt factors; it simply determined that such a test fails to consider the economic realities of college sports.[11]  Id. at 179–80.  College athletes are in a class by themselves.  Id. at 177.  Academic interns and externs are not.  Nonetheless, the only case from the Third Circuit considering the Glatt factors has just rejected their application.  Id. at 179–80.

Furthermore, the DialAmerica, Enterprise, and Glatt tests do not limit the court to the above-referenced factors, but rather direct just the opposite.  For example, DialAmerica advises that, since "neither the presence nor absence of any particular factor is dispositive…'courts should examine the circumstances of the whole activity,'…and should consider whether, as a matter of economic

---

[11] The district court in Johnson rejected use of the DialAmerica factors, applied the Glatt factors, and determined that the college athletes' complaint plausibly alleged that they were employees of the schools they attended. Johnson v. Nat'l Collegiate Athletic Ass'n, 556 F. Supp. 3d 491, 509–512 (E.D. Pa. 2021), aff'd in part, vacated in part, remanded, 108 F.4th 163 (3d Cir. 2024).  In vacating, the Third Circuit distinguished college athletes from unpaid interns because, for example, interscholastic athletics are not part of any academic curriculum. 108 F.4th at 180.

reality, the individuals 'are dependent upon the business to which they render service.' " DialAmerica, 757 F.2d at 1382–83 (quoting Sureway Cleaners, 656 F.2d at 1370).  The Enterprise factors also "do not constitute an exhaustive list of all potentially relevant facts, and should not be blindly applied." 683 F.3d at 469. Likewise, the specified Glatt factors are non-exhaustive and "courts may consider relevant evidence beyond the specified factors in appropriate cases." 811 F.3d at 537.

Moreover, despite Fortis Institute's arguments in support of an early ruling, "FLSA coverage is a highly factual inquiry that requires consideration of 'the circumstances of the whole activity ... rather than any one particular factor.' " Burrell, 60 F.4th at 43 (quoting DialAmerica, 757 F.2d at 1382 (3d Cir. 1985) (additional citations omitted)). Courts must "consider all the relevant evidence, including evidence that does not fall neatly within one of the...factors." Id. at 44 (quoting Enterprise, 683 F.3d at 469).

The Catalog is but one source of relevant evidence. (See Doc. 38-2).  And although it contains policies favorable to Fortis in the analysis, it also contains policies favorable to the plaintiff.  Additionally, these policies may have been followed, or they may not have been followed in plaintiff's specific case. Discovery is necessary to appropriately consider the realities of the parties'

32

relationship.  Thus, the motion to dismiss plaintiff's FLSA and PMWA claims will be denied.

### b. Title VII and PHRA claims

In Count III of the second amended complaint, plaintiff asserts claims due to Fortis's alleged violations of Title VII.  Count IV brings similar claims premised upon the PHRA.  "Claims under the PHRA are interpreted coextensively with Title VII claims." Atkinson v. LaFayette Coll., 460 F.3d 447, 454 n. 6 (3d Cir. 2006).

Title VII forbids, among other things, "status-based discrimination by employers, employment agencies, labor organizations, and training programs." Faush v. Tuesday Morning, Inc., 808 F.3d 208, 212 (3d Cir. 2015)(quoting Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 355–56 (2013)).  To prevail on her claims pursuant to Title VII, plaintiff must have an "employment relationship" with Fortis Institute. Id. (citing Covington v. Int'l Ass'n of Approved Basketball Offs., 710 F.3d 114, 119 (3d Cir. 2013)).  To determine whether the plaintiff was an employee for purposes of Title VII claims, the test of Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 112 S. Ct. 1344, 117 L. Ed. 2d 581 (1992), applies. Id. at 213–14.  The non-exhaustive list of Darden factors include:

> the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party;

the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

See Faush, 808 F.3d at 214 (quoting Darden, 503 U.S. at 323–24).

The court has considered the allegations in plaintiff's second amended complaint and the information provided by Fortis in its Catalog relative to these factors. For reasons similar to the FLSA analysis above, plaintiff has plausibly pled that she was an employee and the questions presented by plaintiff's Title VII and PHRA claims are too fact-intensive to resolve at this stage. See Graves v. Lowery, 117 F.3d 723, 729 (3d Cir. 1997)("the precise contours of an employment relationship can only be established by a careful factual inquiry."). Accordingly, Fortis Institute's motion to dismiss these claims will likewise be denied.

**Conclusion**

For the reasons set forth above, Fortis Institute's motion to dismiss will be denied. An appropriate order follows.

Date: 9/9/24

**JUDGE JULIA K. MUNLEY**
**United States District Court**